IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BILLY JO BLAHA,

                Plaintiff,

  v.                                      OPINION and ORDER

SAUK COUNTY and BLAKE ZIBELL,           24-cv-834-jdp

                Defendants.

---

Defendant Blake Zibell, a deputy with the Sauk County Sheriff's Office, arrested plaintiff Billy Jo Blaha for operating a motor vehicle while under the influence of alcohol. Blaha was transported to the Sauk County Jail, where Zibell ordered a paramedic to draw her blood. Blaha doesn't contest the arrest, but she contends that she did not consent to the blood draw, which violated her rights under the Fourth Amendment.

Defendants move for summary judgment. Dkt. 15. The key factual issue is whether Blaha consented to the blood draw. As explained below, the summary judgment evidence is messy, but the bottom line is that Blaha has adduced admissible evidence that she did not consent to the blood draw, so her consent is genuinely disputed. Zibell asserts qualified immunity, but the qualified immunity issue rises and falls with the factual dispute. If Zibell ordered the blood draw without Blaha's consent, he violated her clearly established Fourth Amendment rights. The court will deny defendants' motion for summary judgment for Zibell.

Defendants also contend that Sauk County is not a proper defendant because there is no private right of action for indemnification under Wis. Stat. § 895.46. *See* Dkt. 16, at 10–11. But this court has held that "it is appropriate and efficient to keep the county as a defendant in the case for the purpose of ordering complete relief." *Murphy v. Juneau Cnty.*, No. 22-cv-33-

jdp, 2023 WL 3040649, at *7 (W.D. Wis. Apr. 21, 2023) (collecting cases). The court will take the same approach here and deny the motion for summary judgment for Sauk County.

BACKGROUND

The following facts are undisputed except where noted.

Defendant Blake Zibell, a deputy with the Sauk County Sheriff's Office, pulled over plaintiff Billy Jo Blaha after she failed to stop at a stop sign. Zibell smelled alcohol coming from inside Blaha's vehicle. Zibell asked Blaha to step out of her vehicle, and she agreed to field sobriety testing. Blaha also agreed to provide a preliminary breath test, which showed that she had a blood alcohol content of 0.173. Zibell arrested Blaha for operating a motor vehicle while under the influence of alcohol.

After arresting Blaha, Zibell read to her Wisconsin's "Informing the Accused" form, part of the state's implied consent law. Per county practice, Zibell recorded audio of the interaction on his phone. After the form was read, Blaha and Zibell talked about whether she would consent to a blood draw. Blaha said that she did not consent to a blood draw.

Defendants concede that it is genuinely disputed whether Blaha gave Zibell her consent to conduct a blood draw sometime after the recording. *See* Dkt. 25, at 7 n.1 ("A factual dispute exists over whether Blaha consented to the blood draw in the squad car to Deputy Zibell after the recording, but for the purposes of Defendants' motion, the dispute is immaterial.").

Zibell transported Blaha to the Sauk County Jail for processing. There, without obtaining a warrant, Zibell ordered a paramedic, Rick Sherman, to draw Blaha's blood. Defendants contend that Blaha gave verbal consent to Sherman to conduct a blood draw; Blaha denies doing so.

2

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

The Fourth Amendment generally requires a law enforcement officer to obtain a warrant before conducting a blood draw. *See Birchfield v. North Dakota*, 579 U.S. 438, 455–56 (2016). When, as here, an officer proceeds without a warrant, a blood draw is reasonable only if it falls within a recognized exception to the Fourth Amendment's warrant requirement. *See Missouri v. McNeely*, 569 U.S. 141, 148 (2013); *Petersen v. Pedersen*, 140 F.4th 421, 428 (7th Cir. 2025). The exception at issue in this case is consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 222 (1973); *United States v. Ahmad*, 21 F.4th 475, 478 (7th Cir. 2021).

Defendants move for summary judgment, Dkt. 15, contending that the blood draw was lawful because Blaha consented to Sherman's request to draw her blood, *see* Dkt. 16, at 4–7. The court will grant defendants' summary judgment motion only if they show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must deny the motion if a reasonable jury could return a verdict in Blaha's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers the facts in the light most favorable to Blaha and construes all reasonable inferences from those facts in her favor. *See Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 726 (7th Cir. 2025).

**A. Defendants' contention that Blaha gave Sherman consent to draw her blood is not supported by admissible evidence**

Defendants propose as an undisputed fact that: "Prior to conducting the blood draw, Blaha gave verbal consent for the blood draw directly to Paramedic Sherman." Dkt. 25, ¶ 35. Blaha disputes the proposed fact. But defendants contend that because Blaha can't remember

3

her conversation with Sherman, she has no evidence to support her version of the facts, and thus the dispute is not genuine. But defendants' own evidence doesn't support the proposed fact.

Defendants rely on Sherman's declaration to support their contention that Blaha gave Sherman consent to draw her blood. There, Sherman states:

> Prior to conducting the blood draw, Billy Jo Blaha gave verbal consent to the blood draw which is reflected in the Billing Report for Incident 21-3846.

Dkt. 19, ¶ 8. The Billing Report indicates:

> Per the officer the subject was read the "informing the accused." The subject then gave verbal consent to draw blood.

*Id.*, Ex. 1, at 1. Sherman's declaration is equivocal. It does not say that Blaha gave verbal consent directly to Sherman. It does not explain how he knows that Blaha consented to a blood test. The most reasonable inference from Sherman's declaration and supporting exhibit is that Sherman relied on a representation by *Zibell* that Blaha consented to the blood draw. Under that reading, Sherman's declaration is based on hearsay and lacks a personal foundation of knowledge. Defendants cannot establish that a fact is undisputed with evidence that would be inadmissible at trial.

Defendants contend that Blaha cannot genuinely dispute whether she gave verbal consent to Sherman because she does not recall talking with him. *See* Dkt. 27, at 2 (citing Dkt. 26, ¶ 13).[1] Defendants argue that Blaha is manufacturing a factual dispute through

---

[1] During her deposition, Blaha testified that she was drugged and raped hours before she was arrested, which might account for her spotty memory. *See* Dkt. 13 (Blaha Dep. 17–34).

speculation rather than admissible evidence. *See* Dkt. 26, ¶ 13. They cite testimony from Blaha's deposition to support their argument:

> Q: Do you recall having any sort of conversation with [Sherman]?
>
> A: Do you have something to refresh my memory by? I mean --
>
> Q: No. I'm just asking if you have any recollection of having a conversation with [Sherman].
>
> A: No, not -- no. If I did, I mean if I would have had a conversation with the EMT and she would have asked me or anybody asked me to take my blood, I probably would have said no because I don't like needles for one.
>
> . . .
>
> Q: Do you remember whether or not you were asked whether or not you would consent to the blood draw by [Sherman]?
>
> A: If she would have asked me if I would have consented, I would have said no.
>
> Q: Okay. But do you recall specifically being asked?
>
> A: No. All I remember is being told that I had to.

Dkt. 13 (Blaha Dep. 34:18–35:18). Defendants argue that "[a] hypothetical answer untethered from memory cannot create a genuine issue of material fact." Dkt. 26, ¶ 13.

Blaha's testimony is somewhat equivocal, but read fairly, she concedes that she has at most limited memory of her conversation with Sherman. Blaha might not recall talking with Sherman, but she has other admissible evidence supporting her position that she did not consent.

B.  **Blaha's evidentiary support for her position that she did not consent**

Viewing the evidence relating to whether Blaha consented to the blood draw as whole, Blaha has evidentiary support for her position that she did not consent to the blood draw. The court highlights three sets of evidence.

5

First, there's her initial conversation with Zibell. After Zibell arrested Blaha, he put her in his squad car and read to her the "Informing the Accused" form, which includes the question "Will you submit to an evidentiary chemical test of your blood?" followed by a space for the accused's response of "Yes" or "No." Dkt. 18, Ex. 3 (emphasis omitted). After Zibell read Blaha the form, they discussed whether Blaha would consent to a blood draw. In the audio recording of Zibell and Blaha's conversation after he read her the form, Blaha told Zibell "she did not want to submit to a blood test because she isn't a needle person," Dkt. 26, ¶ 5, and "I don't wanna do needles," *id.*, ¶ 7. When Zibell asked whether she would submit to a blood draw, Blaha responded: "No." *Id.*, ¶ 10. A reasonable jury could infer that Blaha said "no" and stuck to her guns, despite her foggy memory of the subsequent conversation with Sherman.

Second, Zibell's evidence is contradictory. Zibell did not indicate whether Blaha consented to the blood draw on the "Informing the Accused" form, which he signed at 3:58 AM. *See* Dkt. 18, Ex. 3. Yet Zibell's police report states: "I read to Billy Jo the informing the accused form. At 3:58 AM Billy Jo stated yes when asked if she would consent to an evidentiary chemical test of her blood." Dkt. 24, Ex. 2, at 5. But on the audio recording that Zibell made, Blaha expressly declined to consent. A reasonable jury could discount Zibell's testimony based on the contradictions in the documentary evidence.

Third, there's Blaha's conversation with Zibell at the Sauk County Jail. Blaha proposes as an undisputed fact that: "Zibell told Blaha that he was going to draw her blood even though she did not consent to it." Dkt. 26, ¶ 14. Blaha relies on her deposition testimony to support her contention that she expressly declined to consent to the blood draw. Here is the pertinent excerpt from that testimony:

> Q: Do you recall specifically being asked [whether you would consent to the blood draw by Sherman]?

6

A: No. All I remember is being told that I had to.

Q: Okay. And who told you that?

A: Zibell.

Q: Okay. And when did he tell you that?

A: He said that I was going to get my blood drawn. And I said, "No. I told you no. I don't like needles, and I told you, no, I would not."

Q: And when did that conversation occur?

A: When I was in a holding cell.

Q: Okay.

A: And he said, "Yes, you are because I have it on a recording." But on the recording you can hear clear as day I said no because I don't like needles

. . .

Q: Do you recall telling anyone on December 27th of 2021 that you did not consent to the blood draw other than Officer Zibell?

A: I was yelling out the holding cell door saying, "I did not tell you that you could take my blood."

Q: Okay. And when would you have been doing that?

A: When he said that I was going to get my blood taken.

Q: Okay. So you would have been yelling that before the blood draw?

A: [Zibell] came by and said I'm getting my blood drawn. I said, "No you're not. I told you no. I don't like needles. And I did not consent."

Q: Okay. And then at that point you were yelling out the cell?

A: I said, "I did not say I could get my blood taken. I told him no."

Q: Okay. And that was before the blood draw; is that correct?

7

>   A: Yes.

Dkt. 13 (Blaha Dep. 35:17–37:12).

Defendants purport to dispute Blaha's proposed fact. Citing the same portion of Blaha's deposition testimony, they state:

> The proposed fact is not supported by the cited documents and therefore it must be disregarded pursuant to FRCP 56(c). It is undisputed that Blaha so testified; however, the cited testimony does not support that Deputy Zibell was going to draw her blood *even though* she *did not consent*.

Dkt. 26, ¶ 14. But defendants submit no evidence contradicting Blaha's testimony about her conversation with Zibell, so the court considers its factual content to be undisputed. A reasonable jury could find that while Blaha was detained at the Sauk County Jail she reiterated her refusal to consent to a blood draw.

One final point on the issue of consent. Zibell stood in the room and watched the blood draw occur. It is undisputed that "Blaha did not refuse Paramedic Sherman's request to conduct a blood draw," Dkt. 25, ¶ 36, and that "Blaha cooperated with Paramedic Sherman and the blood draw," *id.*, ¶ 38. But a reasonable jury could infer that Blaha was merely acquiescing to Zibell's authority, and mere acquiescence is not consent. *See Schneckloth*, 412 U.S. at 233; *United States v. Nafzger*, 965 F.2d 213, 217 (7th Cir. 1992) (per curiam).

## C. Defendants' motion to supplement the record

After the parties completed summary judgment briefing, defendants moved for leave to file supplemental evidence. Dkt. 28. Specifically, defendants want to supplement the summary judgment record with phone calls that Blaha made while detained at the Sauk County Jail. In these calls, Blaha can be heard saying, "I made them take my blood here," and "I had them

take my blood." *Id.*, ¶¶ 7–8. Defendants contend that the calls demonstrate that Blaha consented to the blood draw. *See id.*

After Blaha's July 9, 2025, deposition, defendants' counsel sought and acquired recordings of her jail calls, which demonstrates counsel's awareness of the potential relevance of the calls. *See id.*, ¶¶ 1–4. Defendants reviewed the calls Blaha made to her mother, apparently finding nothing of relevance. *Id.*, ¶ 6. After they filed their summary judgment reply brief on September 8, counsel reviewed additional calls and discovered the phone calls at issue. *Id.*, ¶ 9. Counsel doesn't say when they sought or acquired the recordings of the jail phone calls, an important omission for a motion seeking to submit late evidence. But the court infers that counsel had the recordings in time to use them to support its summary judgment briefing if only counsel been more diligent in reviewing them. The court will deny defendants' motion for leave to file supplemental summary judgment evidence.

Even if the phone calls were properly before the court, the court would conclude that Blaha's statements on the recordings are not clear evidence that Blaha consented to the blood draw. So, even with this evidence, whether Blaha consented to the blood draw is genuinely disputed, precluding summary judgment.

ORDER

IT IS ORDERED that:

1. Defendants Sauk County and Blake Zibell's motion for summary judgment, Dkt. 15, is DENIED.

2. Defendants' motion for leave to file supplemental evidence in support of their summary judgment motion, Dkt. 28, is DENIED.

3. The case will proceed to trial on Blaha's Fourth Amendment unreasonable search claim under 42 U.S.C. § 1983.

Entered December 18, 2025.

                                    BY THE COURT:

                                    /s/

                                  _____
                                  JAMES D. PETERSON
                                  District Judge