IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BILLY JO BLAHA,

                      Plaintiff,

v.

SAUK COUNTY and BLAKE ZIBELL,

                      Defendants.

OPINION and ORDER

24-cv-834-jdp

---

This case is scheduled to go to trial on March 10, 2026. The parties dispute the admissibility of recordings of two phone calls that plaintiff Billy Jo Blaha made while she was in jail. Blaha moves to exclude the recordings under Rule 403 of the Federal Rules of Evidence, or in the alternative moves to admit recordings of two additional jail calls. Dkt. 73. The court will deny Blaha's motion to exclude the initial two recordings because their probative value isn't substantially outweighed by the dangers in Rule 403. Defendants may use the recordings for impeachment purposes. The court will require defendants to include some additional context for one of the calls. The court will also deny Blaha's motion to admit the additional recordings because they aren't relevant.

ANALYSIS

A. Admissibility of the initial two recordings

Defendants want the jury to hear the following portion of the recording of the phone call between Blaha and her boyfriend Kenneth Sala:

> Blaha: [P]robation, because of my alcohol level. But that's the only thing they can do. They can't charge me with it, you know what I mean?

> Sala: I thought you said you weren't drinking?
>
> Blaha: Me?
>
> Sala: Yeah
>
> Blaha: They fuckin'—they fucked me all up. I don't even know what the fuck. I had 'em take my blood.
>
> Sala: Well, they took your blood, so—
>
> Blaha: Huh?
>
> Sala: They took your blood, so—
>
> Blaha: Yeah, I know. I had to. Because I don't know what they fucking did to me.
>
> Sala: Yeah, well.

Dkt. 29, Ex. 2 (Blaha call with Sala, at 5:02–5:30).

Defendants want the jury to hear the following portion of the recording of the phone call between Blaha and her grandmother, Lacella Downing:

> Blaha: I don't remember anything after that.
>
> Downing: Yeah.
>
> Blaha: So, whatever was in my drink. I made 'em take my blood here.
>
> Downing: Yeah, at the jail?
>
> Blaha: Mm-hmm. Fuck yeah I did.
>
> Downing: Yeah. Yeah.

Dkt. 29, Ex. 3 (Blaha call with Downing, at 10:21–10:33).

Blaha contends that the court should exclude the recordings under Rule 403 for two reasons: (1) the statements in the recordings need to be contextualized, which would take too much time and risk confusing the jury; and (2) providing context for the statements would unfairly prejudice Blaha because it would bring up her criminal history and sexual assault

2

allegations. *See* Dkt. 73, at 8–15. Defendants contend that the statements in the recordings don't need to be contextualized because they would serve to impeach Blaha as to her memory of the traffic stop and blood draw. Dkt. 72, at 1. Defendants also contend that the recordings would not unduly prejudice Blaha because they contain Blaha's own statements about her belief that she had been drugged prior to the traffic stop. *Id.* at 3.

The court will deny Blaha's motion to exclude the initial two recordings under Rule 403, which allows the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. The recordings are relevant primarily because they undermine Blaha's credibility because she professes intoxication and a lack of memory of relevant events. Their probative value is not outweighed by the dangers mentioned in Rule 403. The court's final pretrial conference order stated: "Defendants may impeach Blaha as to her memory of the traffic stop and blood draw with evidence that she was intoxicated and that she believes she was drugged." Dkt. 69, at 1. These recordings serve that purpose.

Blaha contends that allowing the jury to hear defendants' proposed portion of the recording of Blaha's phone call with Sala would unfairly prejudice her because it includes a statement from Blaha that she might get probation. Dkt. 73, at 11. Blaha points to the court's motions in limine order, which largely excluded evidence regarding Blaha's criminal and legal history. *See* Dkt. 63, at 2–3. But Blaha's passing comment that she *might* get probation doesn't dredge up details about her prior criminal and civil cases; as particularly relevant here, it doesn't give the jury any information about Blaha's prior and pending OWI matters. Instead, the statement gives the jury helpful context for it to understand the remainder of defendants'

3

proposed portion. It also serves as evidence that Blaha was intoxicated during the traffic stop, which the court admitted for impeachment purposes. Dkt. 69, at 1. The probative value of defendants' proposal is not substantially outweighed by the danger of unfair prejudice to Blaha.

Blaha argues in the alternative that, if the court accepts defendants' proposed portion of the recording of Blaha's conversation with Sala, the court should allow the jury to hear a few more seconds at the end of that portion. *See* Dkt. 73, at 2, 10–13. The court will allow the jury to hear the additional lines Blaha proposes.

Defendants may present the following portion of the recording of Blaha's phone call with Sala:

> Blaha: [P]robation, because of my alcohol level. But that's the only thing they can do. They can't charge me with it, you know what I mean?
>
> Sala: I thought you said you weren't drinking?
>
> Blaha: Me?
>
> Kenny: Yeah
>
> Blaha: They fuckin'—they fucked me all up. I don't even know what the fuck. I had 'em take my blood.
>
> Sala: Well, they took your blood, so—
>
> Blaha: Huh?
>
> Sala: They took your blood, so—
>
> Blaha: Yeah, I know. I had to. Because I don't know what they fucking did to me.
>
> Sala: Yeah, well. I don't know.
>
> Blaha: I don't either. I can't wait.

Dkt. 29, Ex. 2 (Blaha call with Sala, at 5:02–5:37).

4

As for the recording of Blaha's phone call with Downing, defendants' proposed portion risks confusion or misleading the jury. In the full recording, Blaha's statement "I don't remember anything after that" comes just after Blaha told Downing that she was choked by another individual. Dkt. 29, Ex. 3 (Blaha call with Downing, at 10:18) ("He choked me."). To provide more context, Blaha proposes adding the following to the beginning of defendants' proposed portion:

> Blaha: And then I remember Bill [inaudible]
> 
> Downing: So then—
> 
> Blaha: —about going over to the house. Bill said something—I seen that Andy fucking God damn Gasser there, and I don't trust that motherfucker as far as I can throw that scummy motherfuck. And Bill said something about going over to the fuckin' house and grabbin' some shit and he was joking around put his arm around my neck, ya know, and gave me a hug like fucked up. And then somebody else walked up behind after Bill left and I was staring at Andy and that's all I remember.
> 
> Downing: Yeah.
> 
> Blaha: He choked me. And [I don't remember anything after that.]

Dkt. 29, Ex. 3 (Blaha call with Downing, at 09:52–10:18).

Defendants contend that Blaha's proposed addition violates the court's ruling that evidence regarding Blaha's sexual assault prior to the traffic stop will be excluded. Dkt. 69, at 1. Blaha's proposed addition doesn't violate the court's prior ruling because it doesn't refer to the alleged sexual assault. Instead, it helps contextualize what Blaha might have meant when she said, "I don't remember anything after that."

Defendants may present the following portion of the recording of Blaha's phone call with Downing:

Blaha: And then I remember Bill [inaudible]

Downing: So then—

Blaha: —about going over to the house. Bill said something—I seen that Andy fucking God damn Gasser there, and I don't trust that motherfucker as far as I can throw that scummy motherfuck. And Bill said something about going over to the fuckin' house and grabbin' some shit and he was joking around put his arm around my neck, ya know, and gave me a hug like fucked up. And then somebody else walked up behind after Bill left and I was staring at Andy and that's all I remember.

Downing: Yeah.

Blaha: He choked me. And I don't remember anything after that.

Downing: Yeah.

Blaha: So, whatever was in my drink. I made 'em take my blood here.

Downing: Yeah, at the jail?

Blaha: Mm-hmm. Fuck yeah I did.

Downing: Yeah. Yeah.

Dkt. 29, Ex. 3 (Blaha call with Downing, at 09:52–10:33).

## B. Admissibility of additional recordings

Blaha argues that, if portions of the recordings of her calls with Sala and with Downing are admitted, then she should be allowed to play for the jury the recordings of two other phone calls she made while she was in jail. The first recording captures a conversation between Blaha and one of her friends. Blaha wants the jury to hear the following portion of that recording:

Randi: So, did they give you a piss test already?

Blaha: For what? No.

Randi: Well, no, I'm just wondering if they can test your system—test to see what was in your system?

6

> Blaha: No, they have not given me no piss test.
>
> Randi: 'Cause—
>
> Blaha: They took my blood—they took my blood which ain't gonna come back for a month.
>
> Randi: Oh my God.

Pl. Ex. 16.

The second recording captures a conversation between Blaha and her mother. Blaha wants the jury to hear the following portion of that recording:

> Blaha: Well, they already took my blood, so when the blood comes back in a month. Then we'll find out what's all in it.
>
> Mother: Blood for what?

Pl. Ex. 17.

The court will deny Blaha's motion to admit these recordings because they are not relevant. The calls don't have any tendency to make it more or less probable that Blaha consented to the blood draw. Blaha's statements describe defendants' actions: defendants took Blaha's blood. But they do not suggest that defendants took Blaha's blood even though Blaha didn't consent to the blood draw, which is what would give these statements probative value. The court will not allow the jury to hear these recordings.

ORDER

IT IS ORDERED that:

1. Plaintiff Billy Jo Blaha's motion to exclude in their entirety the recording of her phone call with Kenneth Sala and the recording of her phone call with Lacella Downing, Dkt. 73, is DENIED. Defendants may use the recordings for impeachment purposes as limited by this opinion.

7

2. Blaha's motion to admit the recording of her phone call with one of her friends and the recording of her phone call with her mother, Dkt. 73, is DENIED.

Entered March 5, 2026.

                                BY THE COURT:

                                /s/

                                _____
                                JAMES D. PETERSON
                                District Judge